UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

|  |  |  |
|---|---|---|
| J. GUADALUPE RESENDIZ-RAMIREZ, et al., | ) ) ) ) | |
| Plaintiffs/Judgment Creditors, | ) ) | |
| | ) | Civil Action No. 07-1028 |
| v. | ) ) | |
| P & H FORESTRY, LLC, | ) ) ) | |
| Defendant/Judgment Debtor. | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 37(b)(2) AND ORDER TO SHOW CAUSE WHY
DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT
OF THE COURT'S JULY 12, 2011 ORDER**

Plaintiffs request that the Court impose sanctions on Defendant P & H Forestry, LLC, pursuant to Fed. R. Civ. P. 37(b)(2) for its failure to comply with the July 12, 2011 Order compelling it to respond to post-judgment discovery requests. See Dkt. No. 117. Plaintiffs also seek a contempt hearing and order directing Defendant to show cause why it should not be held in contempt of court, and that Defendants and its individual owners pay reasonable expenses pursuant to Fed. R. Civ. P. 37(b)(2)(C).

**I.     Statement of Relevant Facts**

On December 10, 2010, Plaintiffs propounded their first sets of post-judgment Interrogatories in Aid of Enforcement and Requests for Production of Documents to Defendant P & H Forestry. Rather than respond to discovery, Defendant filed for Chapter 7 Bankruptcy less

than a week before discovery responses were due.  The Chapter 7 Bankruptcy resulted in no

discharge and served no purpose other than to delay the discovery process because all actions,

including discovery, were stayed during the pendency of the bankruptcy case.  The bankruptcy

case was closed on April 13, 2011 and Plaintiffs immediately re-urged responses to the discovery

requests on April 18, 2011.  As described in Plaintiffs' May 26, 2011 Motion and Memorandum

in Support of Plaintiffs' Motion to Compel Post-Judgment Discovery, Plaintiffs made numerous

unsuccessful attempts to obtain discovery responses from Defendant. See Doc. Nos. 115 and 116.

The Court issued an order compelling Defendant to respond by July 25, 2011.  See Doc.

No. 117.  However, the deadline came and went with no response from Defendant, as has now

become its habit.  Plaintiffs contacted Defendant on August 2, 2011, reminding Defendant of the

court-ordered deadline and indicating that a contempt motion would be filed if Plaintiffs did not

receive responses by August 5, 2011. See Ex. A.  Although Defendant did not meet this

deadline, Defendant contacted Plaintiffs on August 8, 2011 and stated that the responses would

be in the mail the following day. See Ex. B.  Despite this representation, no responses were

forthcoming.  When the responses had still not arrived by August 16, 2011, Plaintiffs again

contacted Defendant.  Defendant's counsel indicated that he had experienced some medical

issues, so Plaintiffs agreed to wait a little longer.  However, Defendant continued to stall and be

vague about when the responses would be sent.

Not until August 26, 2011 did Plaintiffs finally receive Defendant's discovery responses,

more than a month after the court-ordered deadline.  Even then, the responses were severely

deficient—so deficient, in fact, that Plaintiffs questioned whether they had even been answered

in good faith.  At the discovery hearing held on February 2, 2009, the Court already ordered

Defendants to produce and respond to discovery, namely of information related to any transfers

or payments between Defendant and its individual owners and a successor company, that

overlaps with information sought through post-judgment discovery.  See Ex. C (relevant pages of

hearing transcript).  Even though Defendants never produced that information because the

Court's order became moot once the case settled at a mediation conference held immediately

after the discovery hearing, that same information, among other things, is now relevant to

Plaintiffs' efforts to collect the $36,000 judgment against Defendant.  Thus, Defendant's

continued refusal to produce this information, in light of the Court having already indicated that

it was relevant to whether Defendant hid any of its assets, leads Plaintiffs to believe that

Defendant has not responded in good faith and is intentionally withholding relevant information.

Plaintiffs are particularly interested in the information related to asset-shifting because

they believe that certain representations made by Defendant and its owners at the February 2,

2009 discovery hearing and during settlement negotiations were false.  Specifically, Defendants

repeatedly represented to Plaintiffs outside the courtroom and at the hearing that there was no

relationship between Defendant and another company, Eagle Creek Farms, opened by

Defendant's owners during this litigation and that no assets were shifted away from Defendant to

other individuals or entities.  See Ex C (relevant pages of hearing transcript).

It was not until the fall of 2010, when Plaintiffs received a freedom of information

response from the Arkansas State Highway and Transportation Department, with which

Defendant and Eagle Creek Farms had mowing contracts, that Plaintiffs discovered a letter dated

March 31, 2008 from Defendant's president, Brent Harrod, asking that Defendant's contracts be transferred to Eagle Creek Farms because "Eagle Creek Farms Inc and P&H Forestry LLC along with two other entities are all owned by the same family members...[and that] it would be more practical and economical to consolidate the entities." See Ex. D.  The letter, which was written more than ten months *before* the discovery hearing and mediation conference, also stated that Eagle Creek Farms had "purchased the assets of the other entities." See Ex. D.  Presumably, for Eagle Creek Farms to carry out the mowing contracts of Defendant, it must have also utilized the same equipment and other assets held by Defendant.  Thus, Plaintiffs had discovered strong evidence causing them to doubt Defendant's representations, which were made at the hearing and in settlement conversations to Plaintiffs and the Court, that Eagle Creek Farms was a separate, unrelated entity, and that no assets were exchanged between Defendant and its individual owners or successor companies.  Plaintiffs propounded their post-judgment discovery, in part, in response to this new information.

Moreover, Plaintiffs struggle to comprehend how it could have taken Defendant over eight months to provide such inadequate responses, most of which repeatedly echoed the same invalid objection and response.  Plaintiffs sent Defendant a letter on August 30, 2011 describing why the answers were unresponsive and devoid of useful information, giving Defendant until September 7, 2011 to supplement their responses. See Ex. E.  As has become expected, Plaintiffs' letter was met with silence.

Plaintiffs believe that without court intervention further attempts to obtain responsive answers from Defendant will be futile.  Both during the pendency of this litigation and post-

*Memorandum in Support of Plaintiffs' Motion for*
*Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2)*                                                                                         4

judgment, Defendants have engaged in repeated delays, offered inadequate responses, and

generally failed to cooperate in good faith, forcing Plaintiffs to file numerous motions to compel

and motions for contempt.  See Doc. Nos. 49, 50, 68, 69, 107, 108, 109, 110, 176, and 177.

Clearly, Defendant has learned that such obstructionism and delay is to its benefit.  Given that the

discovery requests were propounded over nine months ago, Plaintiffs seek the Court's

intervention to prevent continued delay.

## II.      Standard of Law

Pursuant to Fed. R. Civ. P. 37(b)(2) and (c), this Court has the authority to impose

various civil sanctions for a party's failure to comply with a discovery order.  These sanctions

include, among others: 1) directing that certain matters or facts be taken as established, as the

prevailing party claims; 2) prohibiting the disobedient party supporting or opposing designated

claims or defenses, or from introducing evidence on those matters; and 3) treating the failure to

comply with the court's order as contempt.  See Fed. R. Civ. P. 37(b)(2)(i),(ii), and (vii).  When a

plaintiff believes that a defendant has violated a court order, the plaintiff may bring the violation

to the court's attention by seeking an order to show cause why the defendant should not be held

in contempt and sanctioned until he complies with the court's order.  Mercer v. Mitchell, 908

F.2d 763, 768 (11th Cir. 1990); see also Siebring v. Hansen, 346 F.2d 474 (8th Cir. 1965)

(affirming a show cause order issued by the district court following plaintiff's motion for

contempt); Jake's Ltd., Inc. v. The City of Coates, Civ. No. 00-cv-192, 2002 U.S. Dist. LEXIS

15951 (D. Minn. Aug. 19, 2002) (granting a contempt hearing and an order to show cause based

on defendant's motion for an order to show cause).  If the court finds that defendant has violated

*Memorandum in Support of Plaintiffs' Motion for*
*Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2)*                                                                        5

its prior order, it can order defendant to show cause why it should not be held in contempt of court and conduct a hearing on the matter.  See Mercer, 908 F.2d at 768; Jake's Ltd., 2002 U.S. Dist. LEXIS 15951.

**III.     The Court Should Impose Sanctions, Grant a Contempt Hearing, and Order Defendant to Show Cause Why It Should Not Be Held in Contempt of the Court's July 12, 2011 Order**

Because Defendant had ample opportunity to comply with the Court's July 12, 2011 order, but has failed to do so, the Court should direct that certain facts be established as Plaintiffs claim, prohibit Defendant from introducing evidence in support of or opposition to other matters, and order Defendant to show cause why it should not be held in contempt.  Plaintiffs have repeatedly attempted to obtain adequate and complete discovery responses from Defendant with no success, and Defendant has provided no reason why it is unable to provide the required information.

Defendant's court-ordered responses to discovery requests are incomplete, unresponsive, and devoid of relevant information.  For example, Defendant responded to 33 out of Plaintiffs' 40 requests for production of documents and several interrogatories with irrelevant stock language and objections.  See Ex. F (Def's Resp. to Req. for Prod.) and Ex. G (Def's Ans. to Interrogs.).  In response to these requests, Defendant merely states that "P & H Forestry is only [sic] party to this litigation and ceased to do business in 2007" and thus "objects to the remainder [of the request] as not designed to lead to discoverable information."  See Responses to Req. for Prod. Nos. 1-7, 10-21, 23, 26-28, 30, and 32-40 and Interrog. Nos. 1 and 3, Exs. F and G. Defendant's objection is invalid because the fact that Defendant ceased doing business in 2007

does not absolve it of its obligation to respond to court-ordered discovery. Moreover, the objection does not explain which part of the "remainder" of the request is objectionable, nor does it explain why the request is "not designed to lead to discoverable information." It is well established in the law, and by Local Rule 33.1 of the Eastern and Western U.S. Dist. Courts, that such blanket objections will not be recognized and must be stated with particularity. The fact that a discovery request asks Defendant to respond, based on its personal knowledge or documents in its possession or control, with regard to other non-parties, does not make that information undiscoverable. Plaintiffs are seeking information that was conveyed between P & H Forestry and others for the purpose of determining what Defendant's total assets and liabilities are now, and what they have been since 2007, when this litigation began, so that Plaintiffs can determine when and how any assets were moved away from P & H Forestry and in order to collect the outstanding judgment from P & H Forestry or others who may also be liable.

Moreover, Defendant repeatedly responded to Plaintiffs' requests by indicating only what assets or liabilities it *currently* has, despite that the request clearly includes time periods in the past. See Req. for Prod. Nos. 1-7, 9, 10, 14, 15, 17, 19, 20-24, 26, 28, 29, 31, 33-35, and 37-40 and Interrog. Nos. 1, 6, 9, 13, and 14 and Defendant's responses thereto, Exs. F and G. As stated above, Plaintiffs seek information regarding Defendant's financial status, assets or liabilities, and transfers or payments to others over a longer period of time to determine when and how any assets may have been moved away from P & H Forestry and for the purpose of collecting the judgment against P & H Forestry or others who may also be liable. For example, in Req. for Prod. No. 17 and Interrog. No. 14, Plaintiffs seek information pertaining to checking or other

accounts used by Defendant since January 1, 2007, and Defendant responded that:

> There are no checking, savings or any other type of account, foreign or domestic,
> maintained by P & H Forestry, LLC.   P & H Forestry is only party to this litigation and
> ceased to do business in 2007.  P & H Forestry objects to the remainder as not designed to
> lead to discoverable information.  See Ex. F, Resp. to Req. For Prod. No. 17.

Despite that Defendant currently has no active accounts, surely Defendant did have some kind of banking account when it was operational, for example in 2007, and the information sought by Plaintiffs would demonstrate what assets Defendant had at that time, when the account was officially closed, and where those assets went before the account was closed.

As described in Plaintiffs' August 30, 2011 letter, attached as Ex. E, additional deficiencies in Defendant's responses, aside from those described above, include the following:

1)      Defendant failed to sign its answers to interrogatories under oath, as required by Fed. R. Civ. P. 33(b), even though the Court has previously ordered Defendant to do so during this litigation.  See Doc. No. 41.

2)      Req. for Prod. No. 9, attached in Ex. F: Defendant's response is incomplete because it attached only a 2008 tax return.  Surely other documents exist that relate to when P & H Forestry ceased doing business, including a tax return from 2007 and any dissolution documents.[1]

3)      Req. for Prod. No. 24, attached in Ex. F: Defendant's objection to Plaintiffs' request seeking payments by Defendant to its attorney based on privilege is invalid.  While

---

[1] Plaintiffs note that while Defendant, in response to RFP No. 22, indicates that dissolution documents were attached, no such documents were identified in the produced documentation.

confidential communications with one's attorney may be privileged, the payment of fees

to one's attorney is not privileged and is directly relevant to this collection action to the

extent that it shows Defendant's income or access to money for paying its other debts or

obligations.  See e.g., In re Grand Jury Proceedings, 791 F.2d 663, 665 (8th Cir. 1986)

(attorney-client privilege protects confidential communications, but not client identity);

United States v. Sindel, 53 F.3d 874, 876 (8th Cir. 1995) (attorney-client privilege

protects confidential communications, but not client identity or fee information).

4)      Interrogatory No. 3, attached in Ex. G:  Defendant must state the specific date on which it

        ceased doing business.  A vague reference to 2007 is not sufficient.  Moreover, in light of

        other documents identified herein indicating that P & H Forestry was consolidated with

        other operations owned by the Harrod family and that its assets were bought by those

        other operations, Plaintiffs find Defendant's response that it had no assets prior to going

        out of business to be incredible.  The interrogatory clearly asks Defendant to describe

        what happened to the assets of P & H Forestry when it was winding down and Plaintiffs

        seek an honest response.

        For the reasons stated herein, Plaintiffs seek the following sanctions as to each inadequate

discovery response:

1)      Req. for Prod. Nos. 1-8, 10, 11, 14, 15, 17, 19, 21, 23, 24, 28, 33, and 40, Interrog. Nos. 3

        and 14:  Because Plaintiffs have repeatedly sought information regarding Defendant's

        assets, transfers of assets, and agreements between Defendant, its owners, other insiders,

        and successors, yet Defendant has failed to respond or to respond adequately, despite the

Court's July 12, 2011 order and a prior order on a very similar issue, Plaintiffs ask that

the Court find as established that Defendant made fraudulent transfers to Eagle Creek

Farms, Inc., Roger Brentley Harrod, John Bradley Harrod, Matt Harrod, John H. Harrod,

JHH & Sons Farms, and F. Mattison Thomas and other entities owned or operated, in

whole or in part, by Eagle Creek Farms, Inc., Roger Brentley Harrod, John Bradley

Harrod, Matt Harrod, John H. Harrod, JHH & Sons Farms, and F. Mattison Thomas.

Plaintiffs also ask the Court to find as established the Defendant made these transfers

with the intent to undercapitalize the corporation, to evade liability in this case, and to

hide assets from Plaintiffs so that Plaintiffs could not collect any part of their judgment.

2)    Req. for Prod. Nos. 9, 10, 17, 21, 22, 28, 31, and 38:  Because Plaintiffs have sought

documentation related to Defendant's compliance with corporate formalities and because

Defendant produced almost nothing, or nothing relevant, Plaintiffs ask the Court to

prohibit Defendant from introducing any additional evidence regarding corporate

formalities that it may or may not have complied with and to find as established that

Defendant failed to maintain separate corporate finances from its individual owners,

failed to make any provision for payment of liabilities at dissolution of the company,

failed to maintain adequate business records, failed to maintain their corporate status as

required by the Arkansas Secretary of State, and failed to hold annual shareholder

meetings or to maintain minutes for those meetings.

3)    Req. for Prod. Nos. 1-11, 14, 15, 17, 19, 21-24, 28, 31, 33, 38, and 40, Interrog Nos. 3

and 14: Based on the facts established above, Plaintiffs ask the Court to prohibit

*Memorandum in Support of Plaintiffs' Motion for*
*Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2)*                                                     10

Defendant from opposing or from introducing any evidence in response to any motions or

other relief that may be sought by Plaintiffs in this Court to pierce the corporate veil or to

find successor liability for Defendant's debt arising out of the Judgment entered by this

Court on June 3, 2009, Doc. No. 111.

In addition to the specific sanctions sought for each interrogatory described herein,

Plaintiffs also request that for Defendant P & H Forestry, LLC's inadequate answers to each of

the discovery requests, and for failing to provide Plaintiffs with signed verifications of their

interrogatory answers as required by Fed. R. Civ. P. 33(b), Defendant be held in contempt of

court.  As such, Plaintiffs request that the Court issue an order for Defendant to show cause why

it is not in contempt of the Court's July 12, 2011 discovery order and schedule a contempt

hearing.  Plaintiffs also request that Defendant and its individual owners pay their reasonable

expenses, including attorneys fees, pursuant to Fed. R. Civ. P. 37(b)(2)(C).

## IV.    Conclusion

Based on the foregoing, Plaintiffs respectfully request that this Court grant Plaintiffs'

motion; sanction Defendant as described herein; schedule a contempt hearing; order Defendant

and its individual owners pay the reasonable expenses, including attorneys fees, pursuant to Fed.

R. Civ. P. 37(b)(2)(C); and issue an order that Defendant show cause for why it should not be

held in contempt of this Court's July 12, 2011 Order for not having responded adequately to

discovery requests, as described in Plaintiffs' August 30, 2011 Letter, attached hereto as Exhibit

E.

Respectfully submitted,

*Memorandum in Support of Plaintiffs' Motion for*
*Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2)*                                                   11

/s/ **Caitlin Berberich**
Caitlin Berberich
Tennessee Bar No. 025780
Melody Fowler-Green
Tennessee Bar No. 023266
SOUTHERN MIGRANT LEGAL SERVICES
A PROJECT OF TEXAS RIOGRANDE LEGAL
AID, INC.
311 Plus Park Blvd., Suite 135
Nashville, Tennessee 37217
Telephone: (615) 750-1200
Facsimile: (615) 366-3349

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of September, 2011, I caused a true and correct copy of the foregoing to be electronically served upon the following counsel of record for Defendant, via the Court's electronic case-filing system:

F. Mattison Thomas
103 East Main, Ste. D
El Dorado, AR 71730

**/s/  Caitlin Berberich**

*Memorandum in Support of Plaintiffs' Motion for*
*Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2)*                    12